350 S.E.2d 531

**ASHLAND OIL, INC.**

v.

**Herschel H. ROSE, III, State Tax Commissioner.**

**No. 16962.**

Supreme Court of Appeals of West Virginia.

Nov. 12, 1986.

Charlie Brown, Atty. Gen., Gregory A. Morgan, Asst. Atty. Gen., Tax Div., Charleston, for appellant.

Thomas R. Goodwin, Susan C. Whittemeier, Goodwin & Goodwin, Charleston, Larry A. Carver, State Tax Counsel, Ashland, for appellee.

BROTHERTON, Justice:

This is a West Virginia Business & Occupation Tax case in which the parties dispute the scope of application of the United States Supreme Court's decision in *Armco, Inc. v. Hardesty,* 467 U.S. 638, 104 S.Ct. 2620, 81 L.Ed.2d 540 (1984). The State Tax Commissioner appeals from a summary judgment granted by Judge Workman of the Kanawha County Circuit Court, which held that business and occupation tax assessed on Ashland Oil, Inc.'s wholesale sales was invalid under *Armco.* We agree with the circuit court that the *Armco* decision applies to the facts of this case. We nevertheless reverse the summary judgment, because in our opinion the holding in *Armco* should be applied prospectively only.

The appellee, Ashland, is a Kentucky corporation qualified to do business in West Virginia. It is an integrated oil company engaged in a wide variety of business enterprises. Pursuant to an agreement between a previous tax commissioner and Ashland, the State Tax Department conducted a detailed audit of Ashland's fiscal years ending September, 1975 and September, 1976. The audit resulted in a deficiency assessment in the amount of $181,313.22 for business and occupation tax on wholesale sales with West Virginia destinations. Ashland filed a petition for reassessment and objected to the proposed adjustments. The Commissioner upheld the assessment of tax in an administrative decision dated April 21, 1981.[1] Ashland filed a timely appeal to the Circuit Court of Kanawha County.

At the administrative level, and also in briefs filed in the circuit court, the controversy focused on whether various sales operations of Ashland had sufficient nexus with the State of West Virginia to support the imposition of the business and occupation tax. The Commissioner concluded in his administrative decision that the contacts of the corporation as a whole were sufficient to support the imposition of tax on all sales having West Virginia destinations. Ashland, however, contended throughout the proceedings that sales by separate marketing units should be evaluated separately for nexus with the state. Prior to resolution of this issue in the circuit court, the United States Supreme Court decided *Armco, Inc. v. Hardesty,* 467 U.S. 638, 104 S.Ct. 2620, 81 L.Ed.2d 540 (1984), and the circuit court granted Ashland summary judgment on that basis.

## I.

Armco, like Ashland Oil, was a diversified corporation embroiled in a dispute with the State Tax Department over the ability of the State of West Virginia to impose business and occupation tax on certain of its wholesale sales to West Virginia customers. This Court reversed a decision of the Circuit Court of Kanawha County, and reinstated an assessment of tax against Armco, holding: (1) Armco was a unitary business with a substantial nexus to West Virginia, and it was not necessary to consider each division of the corporation separately to determine whether tax could be imposed; (2) there was a rational relationship of the tax to the local services and benefits afforded by the State of West Virginia to Armco, and the tax was fairly apportioned; (3) West Virginia's tax on wholesale sales, from which in-state manufacturers were exempt, did not discriminate against out-of-state manufacturers in violation of the commerce clause, because in-state manufacturers paid a higher tax on gross proceeds from manufacturing; and (4) the tax did not violate the "equal and uniform" clause of the West Virginia Con-

---

**1.** The administrative decision refers to adjustments in the retail sales classification for 1975, as well as in the wholesale classification for both the audited years. To the extent that the assessment relates to retail sales, it falls outside the scope of the *Armco* decision, and accordingly is not addressed here.

stitution. *Armco, Inc. v. Hardesty*, 172 W.Va. 67, 303 S.E.2d 706 (1983).

In an opinion delivered by Justice Powell, the United States Supreme Court reversed that decision, and held that the West Virginia Business and Occupation Tax on wholesale sales unconstitutionally discriminated against interstate commerce, because taxpayers who manufactured their products in West Virginia were exempt from the tax. *Armco, Inc. v. Hardesty*, 467 U.S. at 639, 104 S.Ct. at 2621.[2]

The Commerce Clause prohibits a state from discriminating between transactions because of some interstate element. *Boston Stock Exchange v. State Tax Comm'n*, 429 U.S. 318, 328, 97 S.Ct. 599, 605, 50 L.Ed.2d 514 (1977). The Supreme Court in *Armco* found our tax scheme discriminatory on its face, because it taxed certain transactions (wholesale sales) more heavily when they crossed state lines than when they occurred within West Virginia. 467 U.S. at 642, 104 S.Ct. at 2622. The Court refuted this Court's reasoning that out-of-state manufacturers suffered no actual discrimination, saying that the manufacturing tax could not be deemed a "compensating tax" for the wholesale tax on out-of-state businesses, both because manufacturing and wholesaling are not "substantially equivalent events," and because the statute did not provide for any reduction of the manufacturing tax when goods manufactured in West Virginia were sold out-of-state. 467 U.S. at 643–44, 104 S.Ct. at 2623–24. Departing from the clear course of recent decisions on this issue, *see, e.g., Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279 & n. 8, 97 S.Ct. 1076, 1079 & n. 8, 51 L.Ed.2d 326 (1977); *Department of Revenue v. Association of Wash. Stevedor-*

*ing Cos.*, 435 U.S. 734, 750, 98 S.Ct. 1388, 1399, 55 L.Ed.2d 682 (1978), the Court said that no actual discriminatory impact was required to establish a Commerce Clause violation. It applied instead the "internal consistency" standard previously used to assess the validity of state net income taxes: "[T]he tax must be such that, if applied by every jurisdiction, there would be no impermissible interference with free trade." 467 U.S. at 644, 104 S.Ct. at 2624, *quoting Container Corp. v. Franchise Tax Bd.*, 463 U.S. 159, 169, 103 S.Ct. 2933, 2942, 77 L.Ed.2d 545 (1983). Prior to *Armco*, this test had been used only in net income tax cases, where net income must be apportioned among the states in which the taxpayer does business. In gross receipts tax cases apportionment has not been considered necessary, because the source of receipts can be determined directly.[3]

In this case, the Tax Commissioner asserts that the exemption for in-state wholesalers was struck down in the *Armco* decision and not the wholesale tax on out-of-state manufacturers. The taxpayer argues to the contrary, and the text of the *Armco* opinion supports the taxpayer's position. The opening paragraph of the Supreme Court's opinion reads:

> In this appeal an Ohio corporation claims that West Virginia's wholesale gross receipts tax, from which local manufacturers are exempt, unconstitutionally discriminates against interstate commerce. We agree and reverse the state court's judgment upholding the tax.

467 U.S. at 639, 104 S.Ct. at 2621. As pointed out by counsel for the taxpayer, if the exemption and not the wholesale tax had been struck down, it would not have

---

**2.** W.Va.Code § 11–13–2c (1983) imposes a tax of 0.27% on gross income of a person engaged in the business of selling at wholesale. At the time *Armco* was decided, and during the audit period in this case, W.Va.Code § 11–13–2 (1974) included an exception from the wholesale tax for manufacturers and producers of natural resources within West Virginia who sold their products at wholesale in West Virginia. The exception for in-state manufacturers was removed effective April 13, 1985. *See* W.Va.Code § 11–13–2 (Supp.1986).

**3.** We do not rule out the possibility that apportionment may be the only equitable way to resolve the problem of imposing a gross receipts tax on activities that occur partly within and partly outside the taxing state. For an article suggesting this approach, see Judson & Duffy, *An Opportunity Missed:* Armco, Inc. v. Hardesty, *A Retreat from Economic Reality in Analysis of State Taxes,* 87 W.Va.L.Rev. 723 (1985).

been necessary to reverse the judgment upholding the wholesale tax.

*Armco* did, then, strike down the tax on wholesale sales, at least as applied to out-of-state manufacturers.[4] The State Tax Commissioner does not dispute that Ashland is an out-of-state manufacturer selling at wholesale within West Virginia. The circuit court was, therefore, correct in concluding that the assessment against Ashland came within the holding of the United States Supreme Court in *Armco*.

## II.

The Commissioner's second line of defense is that the *Armco* decision should be applied prospectively only, *i.e.*, only from the date of decision, June 12, 1984, forward. The Commissioner filed a petition for rehearing with the United States Supreme Court on this basis, and the petition was denied. Resolution of the retroactivity issue is, therefore, left to this Court.[5]

■ Although statutes normally operate prospectively only, judicial decisions ordinarily operate retroactively. The courts of this country long have recognized exceptions to the rule of retroactivity, however. *See, e.g., Great Northern Ry. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932); *Gelpcke v. City of Dubuque*, 68 U.S. (1 Wall) 175, 17 L.Ed. 520 (1863). In syllabus point 5 of *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979), this Court set out five criteria for prospective application of judicial decisions in civil cases:

In determining whether to extend full retroactivity, the following factors are to be considered: First, the nature of the substantive issue overruled must be determined. If the issue involves a traditionally settled area of law, such as contracts or property as distinguished from torts, and the new rule was not clearly foreshadowed, then retroactivity is less justified. Second, where the overruled decision deals with procedural law rather than substantive, retroactivity ordinarily will be more readily accorded. Third, common law decisions, when overruled, may result in the overruling decision being given retroactive effect, since the substantive issue usually has a narrower impact and is likely to involve fewer parties. Fourth, where, on the other hand, substantial public issues are involved, arising from statutory or constitutional interpretations that represent a clear departure from prior precedent, prospective application will ordinarily be favored. Fifth, the more radically the new decision departs from previous substantive law, the greater the need for limiting retroactivity. Finally, this Court will also look to the precedent of other courts which have determined the retroactive/prospective question in the same area of law in their overruling decisions.

*See also Ables v. Mooney*, 164 W.Va. 19, 264 S.E.2d 424 (1979).[6]

■ To apply the *Bradley* factors to this case, in order: First, the substantive issue in *Armco* was state taxation, a traditionally settled area of law, set out in a statute on which taxpayers and their advisors, as

---

4. Then State Tax Commissioner Rose recognized as much in a memorandum issued July 20, 1984, one month after the *Armco* decision. The memorandum included the following explanation:

   An out-of-state manufacturer of tangible personal property who sells the same at wholesale (as defined in W.Va.Code § 11–13–1) in this State will be exempt from business and occupation tax under the wholesale classification on the gross proceeds from such sales. The out-of-state manufacturer will continue to be taxable under other classifications of the business and occupation tax just like West Virginia manufacturers.

5. In a similar case, the Supreme Court recently indicated that tax refund issues, or issues concerning the remedy for imposition of an unconstitutional tax, are frequently intertwined with state law and may be better resolved at the state level. *Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 277, 104 S.Ct. 3049, 3059, 82 L.Ed.2d 200 (1984).

6. These criteria follow closely the analysis employed by the United States Supreme Court in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971), and later cases.

well as the State of West Virginia, relied.[7] Neither was the new rule clearly foreshadowed. As noted above, the rule used to invalidate the tax in *Armco* was an unexpected retreat from the actual economic impact standard of *Complete Auto* and its progeny. *See, e.g.,* Judson & Duffy, *An Opportunity Missed:* Armco, Inc. v. Hardesty, *A Retreat from Economic Reality in Analysis of State Taxes,* 87 W.Va. L.Rev. 723, 723 (1985); Lathrop, Armco—*A Narrow and Puzzling Test for Discriminatory State Taxes Under the Commerce Clause,* 63 Taxes 551, 557–61 (1985). Further, the issue of the constitutionality of the wholesale tax was presented to the Supreme Court in *Columbia Gas Transmission Corp. v. Rose,* 459 U.S. 807, 103 S.Ct. 32, 74 L.Ed.2d 46 (1982), and the Court dismissed the appeal for want of a substantial federal question. This amounts to a ruling on the merits, *Hicks v. Miranda,* 422 U.S. 332, 344–45, 95 S.Ct. 2281, 2289–90, 45 L.Ed.2d 223 (1975), and Justice Powell acknowledged as much in a footnote to the *Armco* opinion. 467 U.S. at 643–44 n. 7, 104 S.Ct. at 2623–24 n. 7. Second, the wholesale tax provision was a substantive, rather than a procedural, rule. Third, it was not a common law decision that was overruled, but a statute that had been enforced since 1935. Its overruling therefore had a widespread impact, the full ramifications of which have yet to be explored in this and other cases. Fourth, the *Armco* decision was a constitutional interpretation that, as discussed above, represented a clear departure from prior precedent. Fifth, previous law required payment of the wholesale tax, and the Supreme Court validated the tax by refusing the Columbia Gas appeal for want of a substantial federal question. *Armco* reversed that precedent by invalidating the tax as applied to out-of-state manufacturers.

All of these factors militate in favor of prospective application of the *Armco* rule.

Moreover, our research indicates that other courts often have used prospective application to protect the reliance of state and local officials on money collected or assessed under presumptively valid statutes later declared unconstitutional.

In *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) (*Lemon I*), the Supreme Court struck down Pennsylvania's statutory program for reimbursing non-public sectarian schools for secular education services, because it fostered an excessive entanglement of church schools and the State of Pennsylvania. In *Lemon v. Kurtzman,* 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973) (*Lemon II*), the Court reviewed and affirmed a district court order that permitted Pennsylvania to reimburse the schools pursuant to the statute held unconstitutional for services performed prior to the date of its decision in *Lemon I.*

> The process of reconciling the constitutional interests reflected in a new rule of law with the reliance interests founded upon the old is "among the most difficult of those which have engaged the attention of courts, state and federal....": Consequently, our holdings in recent years have emphasized that the effect of a given constitutional ruling on prior conduct "is subject to no set principle of absolute retroactive invalidity but depends upon a consideration of particular relations ... and particular conduct ... of rights claimed to have been vested, of status, of prior determinations deemed to have finality; and of public policy in the light of the nature both of the statute and of its previous application."

411 U.S. at 198–99, 93 S.Ct. at 1468–69 (citations omitted). The Court acknowledged that implementation of the district court's order might to some extent offend the first amendment values on which its decision in *Lemon I* was based, but concluded that "the remote possibility of con-

---

7. A noted commentator observed: "[Decisions applied prospectively] have a common objective, to rid the law of an unsound rule and at the same time preclude undue hardship to a party that has justifiably relied on it. Reliance plays its heaviest role in such areas as property, contracts, and taxation, where lawyers advise clients extensively in their planning on the basis of existing precedents." Traynor, *Quo Vadis, Prospective Overruling: A Question of Judicial Responsibility,* 28 Hastings L.J. 533, 543 (1977).

stitutional harm from allowing the State to keep its bargain" was offset by the expenses incurred by schools in reliance on promised payments for expenses incurred by them prior to the *Lemon I* decision. "It is well established that reliance interests weigh heavily in the shaping of an appropriate equitable remedy." 411 U.S. at 203, 93 S.Ct. at 1471. The majority saw its ruling as giving appropriate deference to federalism, noting the "general principle that, absent contrary direction, state officials and those with whom they deal are entitled to rely on a presumptively valid state statute, enacted in good faith and by no means plainly unlawful." 411 U.S. at 208–09, 93 S.Ct. at 1473–74. Thus the Supreme Court applied its holding in *Lemon I* prospectively from the date of decision primarily to protect the financial reliance of the Pennsylvania schools affected. Although *Lemon II* is not a tax refund case and does not therefore provide direct and conclusive authority in this case, it provides the basis for applying the retroactivity analysis in the context of protecting state fiscal interests. *See also Cipriano v. Houma*, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) (decision holding unconstitutional Louisiana's property-taxpayer limitation on franchise applied prospectively because retroactivity would impose significant hardship on cities, bondholders, etc.)

Numerous state courts have denied state tax refunds in cases where a tax was found unconstitutional. Chief among them is *Salorio v. Glaser*, 93 N.J. 447, 461 A.2d 1100, *cert. denied*, 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983). In that case, the Supreme Court of New Jersey found that state's Emergency Transportation Tax ("ETT") unconstitutional as in violation of the privileges and immunities clause of the Constitution, because it taxed New York residents at a higher effective rate on their New Jersey income than it taxed New Jersey residents. After so holding, the court not only made the decision prospective, but delayed the effective date of its holding until January 1 of the succeeding year, in order to allow state officials sufficient time to compensate for the loss of revenue.[8] 93 N.J. at 467–68, 461 A.2d at 1111.[9]

Given that the *Armco* decision represented a reversal of prior precedent, and that retroactive application of the *Armco* rule would cause severe hardship, estimated at $50 million in tax refunds if applied retroactively, we choose to apply the ruling prospectively from the date of decision, June 12, 1984.[10] This means that there was no business and occupation tax on wholesale sales by out-of-state manufacturers made between June 12, 1984, and the date the statute was amended to remove the exemption for West Virginia manufacturers.

Although Ashland asserts that it raised the commerce clause argument from the beginning, it is clear from the record that

---

**8.** We are mindful that the tax assessed against Ashland is not money that the State has collected and already spent, but rather a liability for tax asserted by the State. Our holding, however, affects all tax, both collected and assessed, on wholesale sales by out-of-state manufacturers.

**9.** Other cases refusing refunds when declaring a state or local tax invalid include *Metropolitan Life Ins. Co. v. Comm'r*, 373 N.W.2d 399 (N.D.1985); *Bond v. Burrows*, 103 Wash.2d 153, 164, 690 P.2d 1168, 1174 (1984); *Jacobs v. Lexington-Fayette Urban County Gov't*, 560 S.W.2d 10 (Ky.1977); *Pellnat v. City of Buffalo*, 59 A.D.2d 1038, 399 N.Y.S.2d 788 (1977); *Hurd v. City of Buffalo*, 41 A.D.2d 402, 343 N.Y.S.2d 950 (1973), *aff'd*, 34 N.Y.2d 628, 311 N.E.2d 504, 355 N.Y.S.2d 369 (1974); *Gulesian v. Dade County School Bd.*, 281 So.2d 325 (Fla.1973); *Southern Pacific Co. v. Cochise County*, 92 Ariz. 395, 406, 377 P.2d 770, 778 (1963).

**10.** In a purely prospective ruling, even the party who successfully litigates the issue does not benefit from the new rule. *See, e.g., Salorio v. Glaser, supra*. Traynor, *Quo Vadis, Prospective Overruling*, 28 Hastings L.J. at 546–47. If the *Armco* case were before us, we would have the opportunity to make such a ruling. The issue with respect to *Armco* is res judicata, however, and not subject to collateral attack. Also, we do not consider the application of prospectivity in criminal rights cases such as *People v. Boyd*, 38 Cal.3d 762, 215 Cal.Rptr. 1, 700 P.2d 782 (1985), dispositive in a civil setting. Where a decision of unconstitutionality affects the life or liberty of a convicted criminal, the Supreme Court has extended the rules of prospective operation to include pending cases, while limiting retroactivity in order not to disturb final judgments. Such considerations are not present in civil cases, and a strict rule of prospectivity may therefore be applied.

the real dispute in this case has been nexus. Neither the Supreme Court's decision in *Armco* nor our decision today impairs Ashland's ability to litigate that issue and have its rights determined in the circuit court. Any benefit from the *Armco* decision would have been a windfall to Ashland. We believe, therefore, that the reliance of the State of West Virginia on a presumptively valid tax outweighs any injury that may be sustained by Ashland on account of our holding of prospectivity.

We, therefore, reverse the summary judgment and remand this case to the circuit court for further proceedings consistent with this opinion.

Reversed.