[Nos. 51910–2, 51110–1.   En Banc.   January 28, 1988.]

NATIONAL CAN CORPORATION, ET AL, *Appellants*, v. THE DEPARTMENT OF REVENUE, *Respondent*.

TYLER PIPE INDUSTRIES, INC., *Appellant*, v. THE DEPARTMENT OF REVENUE, *Respondent*.

*Bogle & Gates, John T. Piper, D. Michael Young, Franklin G. Dinces,* and *James R. Johnston,* for appellants National Can Corp., et al.

*Riddell, Williams, Bullitt & Walkinshaw,* by *Thomas C. McKinnon* and *Thomas C. Armitage,* for appellant Tyler Pipe Industries.

*Kenneth O. Eikenberry, Attorney General, Leland T. Johnson, Senior Assistant,* and *William B. Collins* and *Timothy R. Malone, Assistants,* for respondent.

UTTER, J.—This is a remand from the United States Supreme Court where various commercial enterprises (taxpayers) claimed Washington's multiple activities exemption to the business and occupation (B & O) tax, RCW 82.04-.440, discriminated against interstate commerce in violation of the commerce clause, U.S. Const. art. 1, § 8. In *Tyler Pipe Indus., Inc. v. Department of Rev.,* ___ U.S. ___, 97 L. Ed. 2d 199, 107 S. Ct. 2810 (1987) (hereinafter *Tyler*) the United States Supreme Court vacated and remanded this

court's decisions in *Tyler Pipe Indus., Inc. v. Department of Rev.*, 105 Wn.2d 318, 715 P.2d 123 (1986) (hereinafter *Tyler Pipe*) and *National Can Corp. v. Department of Rev.*, 105 Wn.2d 327, 715 P.2d 128 (1986) (hereinafter *National Can*). In *Tyler Pipe* and *National Can*, this court held Washington's B & O tax exemption was valid under the commerce clause in that (1) there was a sufficient nexus between the interstate activities and the State, (2) it was fairly apportioned, (3) it was fairly related to the services provided, and (4) it did not discriminate against interstate commerce. The United States Supreme Court held there was sufficient nexus, and the tax was fairly apportioned, but found the multiple activities exemption discriminated against interstate commerce. The Court then remanded to this court to decide the refund issues raised by its ruling.

The decisive issues before this court are whether state law mandates refunds, and if not, whether this is an appropriate case for prospective application. We hold state law does not require refunds, and prospective application is appropriate.

I

STATE LAW

In order to reach the retroactivity issue, this court must first decide if Washington state statutory law or state case law mandates refunds of taxes paid prior to the Supreme Court's *Tyler* decision. If this state's tax refund statutes, RCW 82.04.4286 and RCW 82.32.060 apply, then all other issues are irrelevant.

■■ This court has stated that, if a tax were in violation of the due process or commerce clauses, it would also be in violation of former RCW 82.04.430(6) (subsequently recodified as RCW 82.04.4286). *Chicago Bridge & Iron Co. v. Department of Rev.*, 98 Wn.2d 814, 819, 659 P.2d 463, *appeal dismissed*, 464 U.S. 1013 (1983). However, taxpayers' argument based on *Chicago Bridge* misconstrues the more basic inquiry at issue here. If the taxes were collected in violation of the constitution, then the state refund stat-

utes would mandate refunds. However, if the court finds the *Tyler* holding is to be applied only prospectively, then for the purposes of applying the refund statutes it is as if the taxes collected pre–*Tyler* were constitutionally collected. The statutory argument ignores the very meaning of prospective application. Washington case law does not support the proposition that tax refunds are always mandated when a statutory scheme is found to be unconstitutional. This court recently found a part of Washington's sales tax to be unconstitutional and yet gave only prospective application to its decision and afforded no refunds to taxpayers. *Bond v. Burrows*, 103 Wn.2d 153, 690 P.2d 1168 (1984). *See also Cascade Sec. Bank v. Butler*, 88 Wn.2d 777, 786, 567 P.2d 631 (1977); *State ex rel. State Fin. Comm. v. Martin*, 62 Wn.2d 645, 673, 384 P.2d 833 (1963).

## II
### RETROACTIVE OR PROSPECTIVE
### APPLICATION OF *TYLER*

■ Since Washington law does not foreclose an inquiry into prospective application, we turn to the factors enunciated by the United States Supreme Court to determine whether prospective application is to be afforded in this case. *Chevron Oil Co. v. Huson*, 404 U.S. 97, 30 L. Ed. 2d 296, 92 S. Ct. 349 (1971) sets out the three factors to be considered in deciding whether to give retroactive or prospective effect to a new rule in a federal civil case. *Tyler*, 107 S. Ct. at 2822. Courts must (1) determine whether the decision establishes a new principle of law either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect and whether retrospective operation will further or retard its operation; and (3) weigh the inequity imposed by retroactive application. *Chevron Oil*, at 106–07. (Although the tests for retroactive application in criminal cases have recently been

reworked, the inquiry in civil cases is still controlled by *Chevron Oil. Griffith v. Kentucky,* ___ U.S. ___, 93 L. Ed. 2d 649, 107 S. Ct. 708 (1987).)

## A
### NEW PRINCIPLE OF LAW

The threshold factor necessary for prospective application is a finding that the *Tyler* decision established a new principle of law overruling past precedent on which litigants may have relied. *Chevron Oil,* 404 U.S. at 106. This court's unanimous decisions in *National Can* and *Tyler Pipe,* the long line of cases upholding the Washington B & O tax, the fact that *Tyler* overruled past precedent on which the states may have relied, and Justice Scalia's dissent in *Tyler,* all compel the conclusion that *Tyler* did establish new principles of law.

In 1984 the United States Supreme Court invalidated West Virginia's wholesale gross receipts tax because it discriminated against interstate commerce. *Armco Inc. v. Hardesty,* 467 U.S. 638, 81 L. Ed. 2d 540, 104 S. Ct. 2620 (1984). In *National Can,* this court distinguished *Armco* based on the belief that Washington's selling and manufacturing taxes were exacted to address the same state burdens and hence were compensatory and therefore substantially equivalent. This court distinguished West Virginia's tax (which imposed substantially different tax rates on manufacturing and on wholesaling) from Washington's tax (which imposed identical rates on each activity), and reasoned that this difference was one reason which had precluded the Supreme Court from finding the West Virginia taxes to be compensatory.

We further held that the "internal consistency" rule is not applicable to a determination of discrimination in a gross receipts tax case. It was our belief that the Court in *Armco* had used the internal consistency concept only in the determination of whether Armco Inc. had to show actual harm once it had demonstrated the tax was facially discriminatory. For this reason we held the Washington tax

was not facially discriminatory, and relied on previous holdings of the United States Supreme Court which had upheld Washington's B & O tax against commerce clause challenges and which were not expressly overruled in *Armco.*

The Supreme Court held, however, that the multiple activities exemption was facially discriminatory, and that manufacturing and wholesaling are not substantially equivalent activities. *Tyler,* 107 S. Ct. at 2818. The Court also held that the "internal consistency" rule was indeed to be applied in a gross receipts case where the allegation is that a tax on its face discriminates against interstate commerce. *Tyler,* 107 S. Ct. at 2820. The *Tyler* Court concluded the B & O tax exposes out–of–state manufacturing or selling activity to a multiple burden from which only manufacturing in–state and selling in–state are exempt. The Court stated that to the extent its conclusion was inconsistent with its ruling in *General Motors Corp. v. Washington,* 377 U.S. 436, 12 L. Ed. 2d 430, 84 S. Ct. 1564 (1964) that case was overruled.

Our unanimous decision in *National Can* indicates we did not read *Armco* as foreshadowing the result in *Tyler.* Taxpayers argue, however, that *Armco*'s reliance on Justice Goldberg's dissent in *General Motors* clearly informed this court that Washington's tax was unconstitutional. The Supreme Court in *Tyler,* discussing its *Armco* decision, said:

> In explaining why the tax was discriminatory on its face, we expressly endorsed the reasoning of Justice Goldberg's dissenting opinion in *General Motors Corp. v Washington,* 377 U. S., at 459. We explained:
> > "The tax provides that two companies selling tangible property at wholesale in West Virginia will be treated differently depending on whether the taxpayer conducts manufacturing in the State or out of it. Thus, if the property was manufactured in the State, no tax on the sale is imposed. If the property was manufactured out of the State and imported for sale, a tax of 0.27% is imposed on the sale price. See *General*

*Motors Corp.* v *Washington,* 377 U.S. 436, 459 (1964) (Goldberg, J., dissenting) (*similar provision in Washington, 'on its face, discriminated against interstate wholesale sales to Washington purchasers for it exempted the intrastate sales of locally made products while taxing the competing sales of interstate sellers'*); *Columbia Steel Co. v. State,* 30 Wash. 2d 658, 664, 192 P.2d 976, 979 (1948) (invalidating Washington tax)." 467 U. S., at 642.

(Italics ours.) *Tyler,* 107 S. Ct. at 2816. The italicized material is a description of Washington's pre–1950 statute which exempted intrastate *sales* on locally manufactured goods. Even though the *Armco* Court did quote Justice Goldberg's *General Motors* dissent, the parenthetical material following that citation referred *not* to the B & O tax statute at issue in *Tyler,* but to the tax which this court struck down in 1948 in *Columbia Steel Co. v. State,* 30 Wn.2d 658, 192 P.2d 976 (1948). Tracing the *Tyler* Court's quote back to Justice Goldberg's dissent in *General Motors,* it appeared that Justice Goldberg was discussing Washington's *old* B & O tax in the sentence which the *Armco* Court quoted. *See General Motors,* at 459. This was appropriate in *Armco* inasmuch as the West Virginia statute was similar to Washington's pre–1950 act. The *Armco* Court's reference to Justice Goldberg's dissent in *General Motors,* without overruling the other cases on which we relied, did not clearly indicate to us the unconstitutionality of Washington's present tax statute. Not until the *Tyler* decision was it clear the Court was agreeing with Justice Goldberg's conclusion regarding Washington's newer B & O tax exemption and that earlier applicable commerce clause cases were being overruled.

Commerce clause challenges to the multiple activities exemption alleging discrimination against interstate commerce have many times been rejected by this court. *See B.F. Goodrich Co. v. State,* 38 Wn.2d 663, 231 P.2d 325, *cert. denied,* 342 U.S. 876 (1951); *Crown Zellerbach Corp. v. State,* 45 Wn.2d 749, 278 P.2d 305 (1954); *General Motors Corp. v. State,* 60 Wn.2d 862, 376 P.2d 843 (1962),

*aff'd,* 377 U.S. 436 (1964); *Chicago Bridge & Iron Co. v. Department of Rev.,* 98 Wn.2d 814, 659 P.2d 463, *appeal dismissed,* 464 U.S. 1013 (1983). This court was clear in our *National Can* decision that because the West Virginia and Washington taxes differed significantly, we were relying on the

> long history of the United States Supreme Court's treatment of this state's gross receipts tax as having withstood commerce clause challenges, *see Department of Rev. v. Association of Wash. Stevedoring Cos.,* 435 U.S. 734, 55 L. Ed. 2d 682, 98 S. Ct. 1388 (1978); *Standard Pressed Steel Co. v. Department of Rev.,* 419 U.S. 560, 42 L. Ed. 2d 719, 95 S. Ct. 706 (1975); *General Motors Corp. v. Washington,* 377 U.S. 436, 12 L. Ed. 2d 430, 84 S. Ct. 1564 (1964) . . .

*National Can,* at 339–40.

We believe Washington's rationale prior to the United States Supreme Court decision in *National Can* was a reasonable assessment of existing case law. In 1983 we held that Washington's B & O tax was not discriminatory under the commerce clause. *Chicago Bridge & Iron Co.,* 98 Wn.2d at 832. The United States Supreme Court dismissed the appeal "for want of substantial federal question", *Chicago Bridge & Iron Co. v. Department of Rev.,* 464 U.S. 1013, 78 L. Ed. 2d 718, 104 S. Ct. 542 (1983). This court in *National Can* said it understood that dismissal to be a "decision on the merits". *National Can Corp. v. Department of Rev.,* 105 Wn.2d 327, 331, 715 P.2d 128 (1986) (citing *Washington v. Confederated Bands & Tribes of Yakima Indian Nation,* 439 U.S. 463, 476 n.19, 58 L. Ed. 2d 740, 99 S. Ct. 740 (1979)). Since this decision issued only the year before *Armco* and addressed the very question at issue in *National Can,* we believed it to conclude that *Armco* did not clearly foreshadow *Tyler.* This court relied on the difference in the Washington and West Virginia statutes and, more importantly, directly on past Supreme Court precedent to uphold the B & O tax in *National Can.*

Also supporting the view that *Tyler* announced new law is Justice Scalia's dissent, which states that the *Tyler* deci-

sion "has no basis in the Constitution, and is not required by our past decisions" and that to apply the internal consistency rule, the "Court is compelled to overrule a rather lengthy list of prior decisions". *Tyler*, 107 S. Ct. at 2824 (Scalia, J., dissenting). The dissent notes that in *Williams v. Vermont*, 472 U.S. 14, 21–22, 86 L. Ed. 2d 11, 105 S. Ct. 2465 (1985), decided the term *after Armco*, the Court failed to apply the internal consistency rule. Justice Scalia wrote:

> The holding of *Armco* thus establishes only that a facially discriminatory taxing scheme that is not internally consistent will not be saved by the claim that in fact no adverse impact on interstate commerce has occurred. To expand that brief discussion into a holding that internal consistency is always required, and thereby to *revolutionize the law of state taxation, is remarkable.*

(Italics ours.) *Tyler*, 107 S. Ct. at 2825 (Scalia, J., dissenting). Justice O'Connor concurred in *Tyler*, but did not read it to impose a requirement that the internal consistency rule be applied absent facial discrimination.

Kalama Chemical, representing in–state manufacturers, argues that as to that group *Tyler* did not enunciate a new principle of law. However, this argument ignores this court's reliance on the concept that selling and manufacturing were believed, until *Tyler*, to be substantially equivalent and therefore compensatory.

Taxpayers argue that a letter from the Department of Revenue to the Governor shows that the Department of Revenue believed just after the *Armco* decision that Washington's multiple activities exemption was unconstitutional. The letter from Donald Burrows, Director of Department of Revenue, to Governor John Spellman dated June 14, 1984, expresses the belief that the State faced substantial loss of tax revenue as a result of the *Armco* decision, and also expressed the likelihood of refunds. This argument is directed to the issue of whether the State justifiably relied on past federal and Washington cases to continue to act under the existing Washington statute.

 Such a memorandum discussing an agency director's

opinion of law is, of course, not binding on this court. Even had this opinion been stated in an official agency statutory construction or written in an attorney general opinion, it would not be binding on either the State or this court. *Walthew, Warner, Keefe, Arron, Costello & Thompson v. Department of Rev.*, 103 Wn.2d 183, 186, 691 P.2d 559 (1984); *Prante v. Kent Sch. Dist. 415*, 27 Wn. App. 375, 385, 618 P.2d 521 (1980). "The court is the proper body to determine the construction and interpretation of statutes. Thus, even when the court's interpretation is contrary to that of an agency charged with carrying out the law, it is ultimately for the courts to declare the law and the effect of the statute." *Nucleonics Alliance, Local 1–369 v. WPPSS*, 101 Wn.2d 24, 29, 677 P.2d 108 (1984).

Even if the director's opinion was that *Armco* placed in question the constitutionality of the B & O tax, it was not within his power to stop collecting taxes under a statute which had been properly enacted by the Legislature. The Department of Revenue was collecting taxes under a statute that had been repeatedly upheld and also enjoyed the presumption of constitutionality. The party challenging the statute would have to prove its invalidity beyond a reasonable doubt. *High Tide Seafoods v. State*, 106 Wn.2d 695, 725 P.2d 411 (1986). The State is not estopped from arguing for prospective application of *Tyler* because it continued to collect taxes under a statute upheld by the trial court and this court because the *Armco* decision raised questions of constitutionality. A similar argument was discussed by the Supreme Court in *Lemon v. Kurtzman*, 411 U.S. 192, 36 L. Ed. 2d 151, 93 S. Ct. 1463 (1973). In *Lemon* state officials continued to act under a statute when they knew that it was obvious there would be a constitutional attack on the statute. The Supreme Court held that state officials are entitled to rely on a presumptively valid state statute, enacted in good faith and not plainly unlawful, and that until judges say otherwise, state officers have the power to carry forward the directives of the state legislature. *Lemon*, at 208–09.

The Department of Revenue may well have relied on the decisions of this court upholding the multiple activities exemption against commerce clause challenges, and there was nothing in the Supreme Court's decisions which clearly overruled this court's analysis until *Tyler* was decided last year. In *St. Francis College v. Al–Khazraji,* ___ U.S. ___, 95 L. Ed. 2d 582, 107 S. Ct. 2022 (1987), the Court applied its decision prospectively because it had required a Court of Appeals to overrule its prior cases. *St. Francis,* 95 L. Ed. 2d at 589. As Justice Traynor has pointed out, "[r]eliance plays its heaviest role in such areas as property, contracts, and taxation, where lawyers advise clients extensively in their planning on the basis of existing precedents." Traynor, *Quo Vadis, Prospective Overruling: A Question of Judicial Responsibility,* 28 Hastings L.J. 533, 543 (1977).

## B
### COMMERCE CLAUSE PURPOSE

Since we conclude that *Tyler* did establish a new principle of law, we must look to see if the purpose of the commerce clause will be furthered or retarded by retroactive application.

The central purpose of the commerce clause is to create an area of free trade among states. *American Trucking Ass'ns v. Scheiner,* ___ U.S. ___, 97 L. Ed. 2d 226, 107 S. Ct. 2829 (1987). However, the Court was clear in *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 288, 51 L. Ed. 2d 326, 97 S. Ct. 1076 (1977) that interstate commerce may be made to pay its fair share of tax burdens. "After years of development of Commerce Clause jurisprudence, the Court has concluded that interstate friction will not chafe when commerce pays for the governmental services it enjoys." *Department of Rev. v. Association of Wash. Stevedoring Cos.,* 435 U.S. 734, 760, 55 L. Ed. 2d 682, 98 S. Ct. 1388 (1978).

It is difficult to understand how retroactive application would encourage free trade among the states since whatever chill was imposed on interstate trade is in the past and the

Legislature has enacted law to attempt to comport with the new commerce clause taxation laws announced in *Tyler.* Laws of 1985, ch. 190; Laws of 1987, 2d Ex. Sess., ch. 3. The Supreme Court has noted that a state has "a significant interest in exacting from interstate commerce its fair share of the cost of state government." *Department of Rev. v. Association of Wash. Stevedoring Cos., supra* at 748. If this court afforded retroactive application and ordered full refunds, taxpayers engaged in interstate commerce would pay no portion of their share of the tax burden. The multiple activities exemption is now known to be unconstitutional because it imposes the risk of multiple burdens on interstate commerce, but this is not to say that all taxes imposed on a manufacturer or wholesaler under the B & O tax were unfair or interfered with free trade among states. The very *risk* of multiple burdens is now enough (since *Tyler*) to invalidate the Washington exemption. But, forcing the State to collect no taxes for the entire period of the statute of limitations would be more in the nature of a punitive award for misconstruing the constitutionality of the B & O tax.

Dicta in *Tyler* suggested that the State could continue to tax under the B & O statute if the Legislature expanded the multiple activities exemption to provide out–of–state manufacturers with a credit for manufacturing taxes paid to other states. *Tyler*, 107 S. Ct. at 2821. The Washington Legislature has now enacted two credits whereby out–of–state manufacturers are afforded credits against Washington's selling tax for manufacturing tax paid to another state, and a credit whereby out–of–state sellers are afforded a credit against Washington's manufacturing tax for selling tax paid to another state. Laws of 1985, ch. 190; Laws of 1987, 2d Ex. Sess., ch. 3. Taxpayers now tell this court that most of the litigants would receive no credits or only very minimal credits under this legislation. This appears to be an admission that the *risk* of multiple burdens possible under the Washington B & O tax was not in fact an actual double burden for most of these litigants. The effect of

complete retroactive application with refunds of all taxes paid would be to create a window of tax–free time for tax-payers involved in interstate commerce to the detriment of all other taxpayers.

Therefore, since the purpose of the commerce clause of free trade among the states is not enhanced by retroactive application and the effect of retroactive application would be to relieve some interstate taxpayers of their duty to pay their fair share of the tax burden, we must ask whether retroactivity would be inequitable.

## C
### INEQUITY IMPOSED BY RETROACTIVE APPLICATION

Taxpayers argue that denying refunds to litigants would discourage challenges to existing precedent. The taxpayers argue *Tyler* should be applied to them because they bore the burden of litigating the issue. They are essentially arguing for what is termed "quasi–prospective" application wherein the new rule applies retroactively to the parties to the overruling decision. Note, *Confusion in Federal Courts: Application of the Chevron Test in Retroactive–Prospective Decisions,* 1985 U. Ill. L. Rev. 117. If courts give successful litigants the benefit of the new rule, they have greater incentive to challenge existing rules. However, this singles out the successful litigant for special treatment while applying the old law to other people similarly situated. It also punishes other parties who relied on prior law and then lose in the overruling decision. 1985 U. Ill. L. Rev. at 128. In addition, in tax cases taxpayers always have the incentive to challenge potentially unconstitutional tax statutes to avoid future tax liability.

██ Taxpayer Tyler Pipe argues that, because the State argued against an injunction for the collection of taxes pending resolution of the constitutionality of the B & O tax, it now has an absolute right to a refund under the Washington refund statutes. This court denied the requested injunction not only because a remedy at law existed but also because Tyler Pipe failed to make the req-

uisite showing of a likelihood of success on the merits. *Tyler Pipe Indus., Inc. v. Department of Rev.,* 96 Wn.2d 785, 794, 638 P.2d 1213 (1982). The fact that the State argued that taxpayers had an adequate remedy at law in the form of a possible refund should not mean the State is foreclosed from arguing that such a refund is not (under applicable preexisting law) now owed to the taxpayers. Because under Washington law a refund suit constitutes an adequate legal remedy foreclosing a preliminary injunction, it does not mean a successful taxpayer necessarily is entitled to retroactive application of his case. Taxpayers here were on notice that Washington and many other states afford prospective application to decisions finding tax statutes unconstitutional. *Ashland Oil, Inc. v. Rose,* __ W. Va. __, 350 S.E.2d 531 (1986), *appeal dismissed,* 95 L. Ed. 2d 522 (1987); *Metropolitan Life Ins. Co. v. Commissioner of Dep't of Ins.,* 373 N.W.2d 399 (N.D. 1985); *Bond v. Burrows,* 103 Wn.2d 153, 690 P.2d 1168 (1984); *Salorio v. Glaser,* 93 N.J. 447, 461 A.2d 1100, *cert. denied,* 464 U.S. 993 (1983); *Jacobs v. Lexington–Fayette Urban Cy. Gov't,* 560 S.W.2d 10 (Ky. 1977); *Pellnat v. Buffalo,* 59 A.D.2d 1038, 399 N.Y.S.2d 788 (1977); *Gulesian v. Dade Cy. Sch. Bd.,* 281 So. 2d 325 (Fla. 1973); *Hurd v. Buffalo,* 41 A.D.2d 402, 343 N.Y.S.2d 950 (1973); *Southern Pac. Co. v. Cochise Cy.,* 92 Ariz. 395, 377 P.2d 770 (1963). *But see Perkins v. County of Albemarle,* 214 Va. 416, 200 S.E.2d 566 (1973). Whether the taxes had been collected or still remained to be collected is not relevant to the issue of retroactive application. The *Ashland* court explained that it was irrelevant whether the disputed taxes had been paid or were simply assessed. *Ashland Oil, Inc. v. Rose, supra.* Both taxes collected and those assessed and unpaid fall within the prospective application of *Armco* and could be retained or collected by the State.

As the previous list of citations illustrates, many states including Washington have found it equitable to afford only prospective application to decisions invalidating taxing statutes. In *Bond v. Burrows, supra,* this court invalidated

the statutory scheme establishing a sales tax differential for border counties. After determining the tax statute violated the constitutional rule of proportionality, this court unanimously agreed to give the ruling only prospective application. Implicit in *Bond* is the fact that the court did not apply its decision so as to afford any refunds of past taxes to the counties which had paid higher taxes than the border counties.

Last year in *Ashland Oil, Inc. v. Rose, supra,* the West Virginia Supreme Court ruled that *Armco* would be applied prospectively. The West Virginia court determined that the reliance of the state on a presumptively valid tax outweighs injuries sustained on account of a holding of prospectivity.

The State's reliance on the constitutionality of the B & O tax was justifiable in light of decisions such as *Tyler Pipe Indus., Inc. v. Department of Rev., supra; National Can Corp. v. Department of Rev.,* 105 Wn.2d 327, 715 P.2d 128 (1986); *Chicago Bridge & Iron Co. v. Department of Rev.,* 98 Wn.2d 814, 659 P.2d 463, *appeal dismissed,* 464 U.S. 1013 (1983); *Department of Rev. v. Association of Wash. Stevedoring Cos.,* 435 U.S. 734, 55 L. Ed. 2d 682, 98 S. Ct. 1388 (1978); and *General Motors Corp. v. Washington,* 377 U.S. 436, 12 L. Ed. 2d 430, 84 S. Ct. 1564 (1964). We do not believe the *Armco* decision so clearly foreshadowed the outcome in *Tyler* that the State's reliance on the validity of the tax was unjustified or that prospective application would be inequitable. As the court in *Salorio* noted, the expenditures made from this revenue during the many years for which refunds are sought cannot be undone, and reimbursement at this point would pose a significant hardship upon the State's existing financial requirements. *Salorio,* 93 N.J. at 465. Refunds sought in these cases alone exceed $56 million and the State estimates refunds from 1980 through 1984 could be in excess of $423 million. Given that the reliance was justified by the presumptive validity of the tax statute and case law upholding that statute, retroactive application would be inequitable.

We turn now to taxpayers' argument that prospec-

tive application would violate due process and equal protection. Prospective application, designed to protect justifiable reliance on prior law and to respect the desire for stability in past transactions, was upheld by the Supreme Court against a due process challenge in 1932 in *Great Northern Ry. v. Sunburst Oil & Ref. Co.*, 287 U.S. 358, 77 L. Ed. 360, 53 S. Ct. 145, 85 A.L.R. 254 (1932). *United States v. Johnson*, 457 U.S. 537, 73 L. Ed. 2d 202, 102 S. Ct. 2579 (1982) reiterated the *Sunburst* rule that the federal constitution has no voice upon the subject of retroactivity and that the constitution neither prohibits nor requires retrospective effect be given to any new constitutional rule. (*Griffith v. Kentucky*, ___ U.S. ___, 93 L. Ed. 2d 649, 107 S. Ct. 708 (1987), made some changes in the *Johnson* rationale in criminal settings, but reaffirmed that *Chevron Oil Co. v. Huson*, 404 U.S. 97, 30 L. Ed. 2d 296, 92 S. Ct. 349 (1971) is to be used in civil cases.) Implicit in *Bond v. Burrows, supra,* is this court's opinion that retroactive application of a decision invalidating a tax is not constitutionally mandated.

In *Salorio v. Glaser, supra,* the New Jersey Supreme Court gave pure prospective effect to a decision declaring a tax statute unconstitutional and ruled that the plaintiffs were not entitled to reimbursement of taxes paid. That court held that "[t]he modern view is that invalidation of a statute does not automatically invalidate all prior transactions made in justifiable reliance upon the statute." *Salorio,* 93 N.J. at 463. Both the *Salorio* court and the *Ashland* court rely on *Lemon v. Kurtzman,* 411 U.S. 192, 36 L. Ed. 2d 151, 93 S. Ct. 1463 (1973) (*Lemon* II) wherein the Court refused to give retroactive application to its decision declaring a Pennsylvania statute unconstitutional. In *Lemon v. Kurtzman,* 403 U.S. 602, 29 L. Ed. 2d 745, 91 S. Ct. 2105 (1971) (*Lemon* I) the Court held unconstitutional a statute under which the state had reimbursed private sectarian schools for certain educational services. However, in *Lemon* II the Court permitted the state to pay the schools for services provided before its decision. The

*Lemon* Court explained, "'in the last few decades, we have recognized the doctrine of nonretroactivity outside the criminal area many times, in both constitutional and nonconstitutional cases.'" *Lemon* II, at 197 (quoting *Chevron Oil Co. v. Huson, supra* at 106). The Court explained that its holdings in recent years have emphasized that the effect of a given constitutional ruling on prior conduct "'is subject to no set "principle of absolute retroactive invalidity" . . .'". *Lemon* II, at 198–99 (quoting *Linkletter v. Walker,* 381 U.S. 618, 627, 14 L. Ed. 2d 601, 85 S. Ct. 1731 (1965)). *Lemon* II also recognized that "statutory or even judge–made rules of law are hard facts on which people must rely in making decisions and in shaping their conduct. This fact of legal life underpins our modern decisions recognizing a doctrine of nonretroactivity." *Lemon* II, at 199.

The *Ashland* court recognized that

> [a]lthough *Lemon II* is not a tax refund case and does not therefore provide direct and conclusive authority in this case, it provides the basis for applying the retroactivity analysis in the context of protecting state fiscal interests. *See also Cipriano v. Houma,* 395 U.S. 701, 89 S. Ct. 1897, 23 L. Ed. 2d 647 (1969) (decision holding unconstitutional Louisiana's property–taxpayer limitation on franchise applied prospectively because retroactivity would impose significant hardship on cities, bondholders, etc.)

*Ashland Oil, Inc.,* 350 S.E.2d at 536. In *Arizona Governing Comm. v. Norris,* 463 U.S. 1073, 77 L. Ed. 2d 1236, 103 S. Ct. 3492 (1983), the majority of the Supreme Court agreed that retroactive relief was not appropriate upon its finding that a state's pension plan violated U.S.C. Title VII. This court has also recognized that "courts possess the power to give their decisions prospective effect, *i.e.,* not to apply the decision to the parties in the overruling case." *Cascade Sec. Bank v. Butler,* 88 Wn.2d 777, 785, 567 P.2d 631 (1977).

Taxpayers argue that denial of refunds violates equal protection in creating two classes of taxpayers—those whose refund claim is based on the discrimination of the B & O tax against interstate commerce and all others. How-

ever, they cite no relevant authority. The body of state and federal law previously cited in the tax area indicates this argument to be without merit. This court held that equal protection forbids all invidious discrimination but does not require identical treatment for all without recognition of difference in relevant circumstances. *Aetna Life Ins. Co. v. Washington Life & Disab. Ins. Guar. Ass'n,* 83 Wn.2d 523, 520 P.2d 162 (1974). In a recent tax case the Supreme Court stated: "In the equal protection context . . . if the State's purpose is found to be legitimate, the state law stands as long as the burden it imposes is found to be rationally related to that purpose, a relationship that is not difficult to establish." *Metropolitan Life Ins. Co. v. Ward,* 470 U.S. 869, 881, 84 L. Ed. 2d 751, 105 S. Ct. 1676 (1985). Earlier this year this court held that equal protection challenges to state tax laws are (absent fundamental rights or suspect classifications) reviewed with a minimum level of scrutiny. *Cosro, Inc. v. Liquor Control Bd.,* 107 Wn.2d 754, 733 P.2d 539 (1987). A holding of pure prospectivity would divide taxpayers into two classes in regard to the time of the *Tyler* decision. Given the State's reliance on prior law, this is not a classification without a rational basis.

Having weighed the equities in this case, we conclude that pure prospective application from the date of the United States Supreme Court *Tyler* decision is appropriate, and appellants' claims for refunds before June 23, 1987, are denied.

PEARSON, C.J., and BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.