434 S.E.2d 10

**STATE of West Virginia ex rel. James H. PAIGE, Secretary, Department of Tax and Revenue, Petitioner,**

v.

**Honorable Herman CANADY, Jr., Judge of the Circuit Court of Kanawha County, and Exxon Corporation, Respondents.**

**No. 21573.**

Supreme Court of Appeals
of West Virginia.

Submitted March 2, 1993.

Decided July 15, 1993.

Silas B. Taylor, Sr. Deputy Atty. Gen., Charleston, for petitioner.

Thomas R. Goodwin, Goodwin & Goodwin, Charleston, for respondents.

NEELY, Justice.

The State seeks a writ of prohibition to prevent the Circuit Court of Kanawha County from entertaining a declaratory judgment action to settle a dispute between Exxon and the Tax Department. Exxon asks the circuit court to declare Administrative Notice 91–15, which describes the procedure that Exxon must follow to obtain a tax refund, unconstitutional. However, the statutory tax refund process set forth in *W.Va.Code* 11–10–14 [1978] and *W.Va. Code* 11–10–14b [1992] provides judicial review of tax refund matters only after the Tax Department has made its ruling on the refund; *W.Va.Code* 11–10–14(i) [1978] explicitly prohibits declaratory judgments in the refund cases. Accordingly, we grant the writ.

Until 1984, the State of West Virginia imposed a wholesale gross receipts tax on all sales of tangible property in West Virginia, but exempted in-state manufacturers from the tax. In that year, the U.S. Supreme Court held the tax unconstitutional in *Armco, Inc. v. Hardesty*, 467 U.S. 638, 104 S.Ct. 2620, 81 L.Ed.2d 540 (1984), because it discriminated against out-of-state producers. Among the goods covered by the tax was gasoline. Exxon paid $4,033,-657.48 in wholesale gross receipts taxes between 1978 and 1984.

The State, not wanting to pay refunds, initially interpreted the *Armco* ruling as requiring the State only to stop collecting the unconstitutional tax. On 17 June 1985, the Tax Department informed Exxon that it would apply *Armco* only prospectively; the State refused to refund any money to Exxon. Ashland Oil, engaged in litigation over its tax liability at the time of the *Armco* decision, appealed to the U.S. Supreme Court our ruling upholding the Tax Department's position that *Armco* applied only prospectively. *Ashland Oil, Inc. v. Rose*, 177 W.Va. 20, 350 S.E.2d 531 (1986). The U.S. Supreme Court reversed our decision and held that the *Armco* decision invalidating the wholesale gross receipts tax must be applied retroactively. *Ashland Oil v. Caryl*, 497 U.S. 916, 110 S.Ct. 3202, 111 L.Ed.2d 734 (1990) *(per curiam); accord National Mines Corp. v. Caryl*, 497 U.S. 922, 110 S.Ct. 3205, 111 L.Ed.2d 740 (1990) *(per curiam )*.

The State, running out of options to avoid repayment of taxes, issued Administrative Notice 91–15, entitled "Payment of

Claims for Refund or Credit by Manufacturers as a Result of Partial Invalidity of the Wholesale Classification of the Business and Occupation Tax." In that notice, the Tax Commissioner advised all taxpayers with pending claims of its procedure to determine the amount of refunds that it would make:

> West Virginia will compensate taxpayers only for the amount of tax they absorbed and did not pass through to consumers and for any loss of market share attributable to the unconstitutional tax.... Claimants should be prepared to furnish this kind of information in order to show the amount of the unconstitutional tax they absorbed and the market share they lost as a result of the unconstitutional tax. The amount of tax absorbed is determined by a Tax Incidence Analysis. The focus of this analysis is the relationship between the elasticity of demand and the elasticity of supply as well as the relationship among input costs, revenues, taxes and product prices.

The Tax Department scheduled a hearing on Exxon's refund claim for 16 June 1992. The Tax Commissioner notified Exxon that the Office of Hearings and Appeals would perform a "tax incidence analysis" to determine the amount of the refund. Administrative Notice 91–15 described the calculations that go into a tax incidence analysis, and the type of evidence that would be useful to the Tax Department in deciding the amount of the refund.

Instead of proceeding with the Tax Department hearing, Exxon sought a writ of *mandamus* from the Circuit Court of Kanawha County. Exxon petitioned the court to declare Administrative Notice 91–15 invalid and to order the Tax Commissioner to comply with the "nondiscretionary" duties set out in the tax refund provisions of the West Virginia *Code*. In order to avoid violating the State's constitutional immunity from suit, the Circuit Court converted the action from a *mandamus* action to a declaratory judgment action on the issue of whether Administrative Notice 91–15 is enforceable. West Virginia *Constitution* Art. VI, § 35. The State now seeks a writ

of prohibition because the declaratory judgment action would be improper.

West Virginia is not unique in having imposed a tax that discriminated against interstate commerce. Nor is West Virginia unique in hoping that when a court invalidates an unconstitutional tax the effect will be prospective only. However, the U.S. Supreme Court disabused the states of that expectation in *McKesson v. Division of Alcoholic Beverages*, 496 U.S. 18, 31, 110 S.Ct. 2238, 2247, 110 L.Ed.2d 17, 32 (1990), where that court held:

> If a State places a taxpayer under duress promptly to pay a tax when due and relegates him to a postpayment refund action in which he can challenge the tax's legality, the Due Process Clause of the Fourteenth Amendment obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation.

 The U.S. Supreme Court has already found the wholesale gross receipts tax unconstitutional, and held that the State must provide retroactive relief. *Ashland Oil v. Caryl*, 497 U.S. 916, 110 S.Ct. 3202, 111 L.Ed.2d 734 (1990). Therefore, the State must provide meaningful backward-looking relief to rectify its collection of an unconstitutional tax. This does not necessarily mean that the State must give refunds; the State could simply collect equivalent taxes on previously exempted in-state corporations. *See McKesson*, 496 U.S. at 40, 110 S.Ct. at 2252, 110 L.Ed.2d at 38, n. 23 and accompanying text. However, the State has made it clear that it has chosen to repay wrongfully levied taxes rather than impose new ones. Indeed, the Legislature, although granting the Tax Commissioner broad discretion in *W. Va. Code* 11–10–14b [1992], expressed a preference for granting credits or refunds over collecting additional taxes. Moreover, the Tax Commissioner has made it clear by his actions that he has no intention of collecting additional taxes.

 In *United States v. Jefferson Electric Mfg. Co.*, 291 U.S. 386, 54 S.Ct. 443, 78 L.Ed. 859 (1933), the U.S. Supreme Court held that the federal government has the

power to keep the part of a wrongfully taken tax that the taxpayer had passed on to its customers. The State, then, must provide a full dollar-for-dollar refund, by credits or payments, of a tax levied in violation of the Commerce Clause but the State may require evidence that the tax paid by the taxpayer seeking refund was not passed on to consumers in such a way *that it did not affect the marketplace performance of the taxpayer.* As the U.S. Supreme Court held in *McKesson,* 496 U.S. at 48–49, 110 S.Ct. at 2256–57, 110 L.Ed.2d at 43:

> The tax injured petitioner not only because it left petitioner poorer in an absolute sense than before (a problem that might be rectified to the extent petitioner passed on the economic incidence of the tax to others), but also because it placed petitioner at a relative disadvantage in the marketplace vis-a-vis competitors distributing preferred local products.... To whatever extent petitioner succeeded in passing on the economic incidence of the tax through higher prices to its customers, it most likely lost sales to the favored distributors or else incurred other costs (e.g., for advertising) in an effort to maintain its market share. *The State cannot persuasively claim that "equity" entitles it to retain tax moneys taken unlawfully from petitioner due to its pass-on of the tax where the pass-on itself furthers the very competitive advantage constituting the Commerce Clause violation that rendered the deprivation unlawful in the first place.* [Footnote omitted; emphasis added]

 However, the U.S. Supreme Court has also recognized that the State has wide latitude in providing for remedies after a tax has been declared unconstitutional:

> [W]ithin our due process jurisprudence, state interests traditionally have played, and may play, some role in shaping the contours of the relief that the State must provide to illegally or erroneously deprived taxpayers, just as such interests play a role in shaping the procedural safeguards that the State must provide in order to ensure the accuracy of the initial determination of illegality or error.... States may avail themselves of a variety of procedural protections against any disruptive effects of a tax scheme's invalidation, such as providing by statute that refunds will be available to only those taxpayers paying under protest, or enforcing relatively short statutes of limitation applicable to refund actions.

*McKesson,* 496 U.S. at 50, 110 S.Ct. at 2257, 110 L.Ed.2d at 44 (citing *Mathews v. Eldridge,* 424 U.S. 319, 348, 96 S.Ct. 893, 909, 47 L.Ed.2d 18, 41 (1976) ("[T]he Government's interest ... in conserving scarce fiscal and administrative resources is a factor that must be weighed" when determining the precise amount of process due). Although due process requires a meaningful remedy, the State has great flexibility in determining its relief mechanisms. When we first issued an opinion in this case we placed the burden of showing that the tax was passed through in such a way that it did not diminish Exxon's market share on the tax commissioner. The tax commissioner petitioned for rehearing, which we granted, and upon reconsideration we believe that the tax commissioner may properly require the taxpayer in this case to demonstrate the degree to which it was injured under the *McKesson, supra,* criteria because it is the taxpayer, not the commissioner, that understands the intricacies of taxpayer's industry and is in possession of the sales data necessary to establish such things as pass through and diminished market share.

Indeed, at oral argument on petition for rehearing the tax commissioner argued persuasively that this case is factually distinguishable from *McKesson* in that there were no favored in-state distributors of gasoline and that if refunds are provided, they will possibly be paid for by exactly the same people who initially paid the tax—namely, residents and taxpayers of West Virginia.

 The Legislature has established a relief mechanism in *W.Va.Code* 11–10–14

[1978].[1] The Legislature designated this procedure as requiring the Tax Department first to rule on the amount of the refund, and then providing judicial review. The Legislature has made this the *exclusive remedy* for procuring a tax refund. *W.Va. Code* 11–10–14(i) [1978] provides, in part:

Remedy Exclusive.—The procedure provided by this section shall constitute the sole method of obtaining any refund or credit, it being the intent hereof that the procedures set forth in this article shall be in lieu of any other remedy, *including the Uniform Declaratory Judgments Act* embodied in article 13, chapter 55 of this code. [Emphasis added.]

Therefore a declaratory judgment action is inappropriate, as such an action would be intervention in the tax refund case not allowed by the statute.

 There is really nothing that a declaratory judgment could accomplish at this point anyway. An Administrative Notice put out by the Tax Department is not a regulation within the contemplation of the Administrative Procedures Act, Chapter 29A of *W.Va.Code.* An Administrative Notice can either be an "interpretive rule" or a "procedural rule" depending on its content. An interpretive rule is a rule "which is intended by the agency to provide information or guidance to the public regarding the agency's interpretations, policy or opinions upon the law enforced by it." *W.Va. Code* 29A–1–2(c) [1982]. Such a rule may not be relied on to impose legal sanction (either civil or criminal), nor is it "admissible in any administrative or judicial proceeding" to either sanction conduct or confer a privilege. Similarly, a " 'procedural rule' ... fixes rules of procedure, practice or evidence for dealings with or proceedings before an agency." *W.Va.Code* 29A–1–2(g) [1982]. Some Administrative Notices express pure interpretive opinion, and others describe procedures to be followed before the Tax Department.

All that Administrative Notice 91–15 does is show the opinion of the Tax Commissioner and describe the procedures to be followed. Administrative Notice 91–15 does not bind the hearing examiner to any result; nor does it alter the rights of the parties. Moreover, Administrative Notice 91–15 does not *require* Exxon to do anything, it merely describes the evidence that Exxon may want to present at its hearing.

For the foregoing reasons, the writ of prohibition prayed for is awarded.

Writ awarded.

---

1. In 1992, the Legislature enacted *W.Va.Code* 11–10–14b [1992], entitled "Monetary remedies for overpayments due to unconstitutionality." This section generally affirms the procedures of *W.Va.Code* 11–10–14 [1978], but grants the Tax Commissioner additional flexibility to deal with repayment of tax refunds owed. In *W.Va.Code* 11–10–14b(b)(2)(A) [1992], the Legislature reiterates its intention that the procedures of *W.Va. Code* 11–10–14 [1978] are exclusive.