[No. 24975. *En Banc.* March 16, 1934.]

CASCADE TELEPHONE COMPANY *et al., Appellants,* v. THE STATE TAX COMMISSION *et al., Respondents.*[1]

*Cleland & Clifford,* for appellants.

*The Attorney General* and *John W. Hanna, Assistant,* for respondents.

[1]Reported in 30 P. (2d) 976.

TOLMAN, J.—The plaintiffs, corporations and individuals engaged in the business of furnishing telephone service, brought this action to restrain the state tax commission from enforcing upon and collecting from them the excise tax provided for in chapter 191 of Laws of 1933, p. 869 (Rem. 1933 Sup., § 8326-1 *et seq.*). A general demurrer to their complaint was interposed and sustained. The plaintiffs elected to stand upon their complaint, and a judgment dismissing the action followed, from which judgment the plaintiffs have appealed. The facts are therefore admitted.

The appellants all come under the definition of telephone and telegraph companies contained in the act, and are actively engaged in furnishing telephone service.

Chapter 191, Laws of 1933, p. 869, imposes an excise tax pure and simple. *State ex rel. Stiner v. Yelle,* 174 Wash. 402, 25 P. (2d) 91.

Subdivision (2) of section 2 of the act reads:

"From and after the first day of August, 1933, and until the thirty-first day of July, 1935, there is hereby levied and there shall be collected from every person an annual tax or excise for the privilege of engaging in business activities. Such tax or excise shall be measured by the application of rates against values, gross proceeds of sales, or gross income, as the case may be, as follows: . . ." Rem. 1933 Sup., § 8326-2, subd. 2.

This language levies or imposes the tax upon everyone who comes under the act, and is the only language in the entire measure which can be construed as even an attempt to make a tax levy.

Paragraph (e) of subdivision (2) of section 2 designates the method of determining the amount of the tax and the rate to be paid by each particular class as follows:

. ''Upon every person engaging or continuing within this state in the following businesses; as to such persons the amount of tax or excise shall be equal to the gross income of the business multiplied by the rate set out after the business, as follows: . . . VI. Telephone and telegraph companies: three per cent;'' Rem. 1933 Sup., § 8326-2, subd. 2, par. (e).

Thereafter, in due order in the bill as presented to the governor appears § 2½, which reads:

''In the case of persons taxable under schedules V, VI, VII and VIII of section 2 (2) (e), whose charges for the sale of property or rendering of service are fixed by municipal ordinance, or are fixed or regulated by any other governmental authority, the amount of tax or excise levied under this act shall be added to the charge otherwise payable for such property or service, and paid by the consumer, and shall be plainly shown as such on the bill rendered for such property or service. This provision shall apply whether such charges or services are made or rendered under the provisions of contract or otherwise.''

The governor vetoed § 2½ in its entirety and the question here presented is as to the effect or effectiveness of that veto.

Appellants urge that § 2½ is not a section or an item within the meaning of our constitution; that, by the veto, the governor cannot affirmatively legislate; and perhaps also that, in this particular instance, the reasons given by the governor for the veto were insufficient; and that therefore the attempted veto was unconstitutional and void.

■ Article III, § 12, of our constitution provides:

''If any bill presented to the governor contain several sections or items he may object to. one or more sections or items while approving other portions of the bill. In such case he shall append to the bill at the time of signing it, a statement of the section or sections, item or items, to which he objects, and the rea-

sons therefor, and the section or sections, item or items, so objected to, shall not take effect unless passed over the governor's objection, as hereinbefore provided.''

The general rule seems to be that the veto power can be exercised only in the manner and under the conditions prescribed by the constitution. 59 C. J. 583. But, even so, there is another general rule applicable in construing constitutions, to the effect that words must be given their fair and ordinary meaning, which must also apply.

We quite agree with the appellants that the words ''section or sections'' as used in the constitution are not always to be limited by the artificial construction of the legislative measure. By the artful arrangement of the subject matter and an arbitrary division into sections, the governor's power might be unduly limited or enlarged without reason.

The words ''section or sections'' have to do more with the subject matter than with arbitrary divisions, but divisions, if properly made, tend to indicate subject matter. Here, the division of the sections so clearly indicates subject matter that it seems idle to further pursue the inquiry.

The quoted portions of the act clearly indicate that § 2 and its subdivisions levied a tax, fixed the means of determining the amount, and established the rate to be paid by the different classes affected. Without § 2½, it is a complete imposition of a tax upon the appellants, with a certain measure provided to determine the amount which they will be required to pay. The whole purpose of taxing the appellants is definitely fixed and determined beyond any question by that portion of the act which precedes § 2½.

Then, by inserting § 2½, the legislature did not modify or limit in any way or in any degree the preceding

provisions, but by § 2½ there was introduced a new, separate, distinct, and, in a measure, independent provision requiring certain persons or classes already taxed to reimburse themselves by collecting from the ultimate consumer the amount of the tax which had already been imposed upon them.

The governor's act in vetoing this separable item, or section, was purely negative. By it he said, in effect, I cannot consent that these persons already taxed shall be compelled to recoup the amount they are required to pay from their customers, but they, in common with all others coming under the act, should be left free to work out a solution of that question according to conditions and circumstances as they may later appear, or as may be determined by the rate fixing body which may have authority over the rates chargeable by such taxpayer.

In other words, the senate and the house said to the taxpayer by § 2½, "You shall pass this tax to your customers," and the governor, properly exercising his right to say no, by his veto of § 2½ negatived that legislative command.

We find it unnecessary to go into the history of the veto power, and but little in the way of decided authority has any application to our peculiar and unusual constitutional provision. We seem to have reviewed the constitutional veto power only in the case of *Spokane Grain & Fuel Co. v. Lyttaker,* 59 Wash. 76, 109 Pac. 316. Nothing there said is out of harmony with the views here expressed.

It was suggested in a companion case where this question was also raised that the governor's veto must fail because he did not adequately give his reasons therefor. The veto message was said to be,

"There is no good reason for the provision embodied in section 2½ and it is therefore vetoed."

We might undertake by our discussion of such a question to demonstrate that there was no good reason to be furthered by the provisions contained in § 2½, but we see nothing in the wording of our constitutional provision which places any duty upon the governor to logically demonstrate his position, or which makes the veto good or bad as the governor's reasons may be sound or otherwise. The giving of a reason by the governor is for the information of the legislature, and when it was told that, in the governor's opinion, the taxpayer should not be required to pass the tax on to the ultimate consumer, it had all of the information necessary. If authority be needed, we think the case of *Birdsall v. Carrick,* 3 Nev. 154, in its reasoning supports our position.

The judgment is affirmed.

BEALS, C. J., BLAKE, GERAGHTY, HOLCOMB, and MAIN, JJ., concur.

STEINERT, J. (dissenting)—I dissent, upon the ground that the governor's veto of § 2½ of the act was wholly ineffectual and void.

The majority opinion concedes that the words "section or sections," used in Art. III, § 12 of the constitution, have reference to subject matter rather than to arbitrary divisions. With that I agree, and hence will not further discuss that phase of the matter.

The majority then takes the position that § 2 of the act is a complete imposition of a tax directly upon the appellants, and that the whole purpose of the act to so tax the appellants is evidenced and determined by that portion of the act which precedes § 2½; further, that the insertion of § 2½ introduced a new, separate, distinct and independent provision, and that, in vetoing

that section, the governor's action was purely negative. With these conclusions of the majority, I can not agree.

By § 2 (2) (e), the legislature imposed a tax, with an inseparable condition, or proviso, contained in § 2½, that the tax was to be imposed upon, and paid by, the consumer. The governor, by his veto, freed the consumer from payment of the tax and imposed it upon the distributor. Stated in another way, the governor, by his veto, completely reversed the legislative intent by abrogating a tax that the legislature had imposed and creating one which the legislature had not provided for at all; the legislature taxed "A," the governor taxed "B."

The record as disclosed by the legislative journals of 1933 shows that this piece of legislation had a difficult and stormy course. It first appeared as H. B. No. 92, introduced on January 20, 1933. (H. J. p. 68.) On February 23, S. H. B. No. 92 took its place, with a recommendation on the part of a majority of the house committee on revenue and taxation that the substitute bill "do pass." (H. J. p. 440.) After numerous amendments, the substitute bill passed the house on March 3, 1933. (H. J. p. 592-3.) The bill was then referred to the senate, where it was passed in an amended form on March 8, 1933. (S. J. p. 672-3.) The house refused to concur in the senate amendments. (H. J. p. 756.) The senate refused to recede from its amendments, and made a request for a conference thereon. (S. J. p. 712.) The request was granted. A free conference committee of both houses was then appointed. Up to this time, § 2½ had not appeared in the bill or in any amendment. The free conference committee then made a full report recommending many amendments to the bill, including § 2½. As thus amended, the bill passed both houses on March 9, 1933.

(H. J. p. 862-5; S. J. p. 778-781.) On the same day, the legislature adjourned.

It will thus be seen that the bill received full consideration in both houses and, in its final form, expressed the clear intention of the legislature that, as to light, water, telephone and gas companies, the amount of the tax was to be paid by the consumer. But the governor, by his veto, says that it shall not be paid by the consumer, but by the respective companies. His action is not purely negative, as the majority opinion states. It is affirmative, because it actually creates a result different from that intended, and arrived at, by the legislature.

The governor has no power of affirmative legislation. The authorities are unanimous upon that point. In *State v. Holder,* 76 Miss. 158, 181, 23 So. 643, it is said:

"And after all, and despite the pragmatic utterances of political doctrinaries, the executive, in every republican form of government, has only a qualified and destructive legislative function and never creative legislative power. If the governor may select, dissect, and dissever, where is the limit of his right? Must it be a sentence or a clause, or a word? Must it be a section, or any part of a section, that may meet with executive disapprobation? May the governor transform a conditional or a contingent appropriation into an absolute one in disregard and defiance of the legislative will? That would be the enactment of law by executive authority without the concurrence of the legislative will and in the face of it."

In *Commonwealth v. Barnett,* 199 Pa. 161, 170, 48 Atl. 976, 55 L. R. A. 882, the limitation upon the power of the chief executive is recognized, in the following language:

"The fact that the governor is limited to negation or concurrence and cannot affirmatively initiate or

amend legislation, does not take away the legislative character of his act."

In *Fairfield v. Foster*, 25 Ariz. 146, 214 Pac. 319, the court said:

"Now it is very true, as stated in *State v. Holder*, 76 Miss. 158, 23 South. 643, that the executive cannot veto a condition or proviso of an appropriation, while allowing the appropriation itself to stand. That would be affirmative legislation without even the concurrence of the legislature. Certainly if, for example, the legislature appropriates, as it did once in Arizona, a certain sum for a girls' dormitory at the University, on condition that a like sum be raised by outside contributions, the governor cannot so use his veto as to make void the condition, while letting the appropriation stand, for the legislature might well have been willing to have spent a certain amount for the given purpose, if others would do likewise, but been utterly averse to the unconditional appropriation. And the veto power was then used in the only constitutional manner, on both proviso and appropriation."

In *Mills v. Porter*, 69 Mont. 325, 222 Pac. 428, 35 A. L. R. 592, the court said:

"The veto is distinctly a negative, not a creative, power. The general rule is that the governor may not exercise any creative legislative power whatsoever."

In *Wood v. State Administrative Board*, 255 Mich. 220, 238 N. W. 16, it is said:

"The veto power is a legislative function, although it is not affirmative and creative, but is strictly negative and destructive."

The designation of the persons who shall pay the tax is a function which belongs exclusively to the legislature, and the governor may not trench upon it, either directly or indirectly.

The governor having attempted to exercise a power which he does not possess, his act is wholly ineffectual

and void. His veto being a nullity, § 2½ of the act still stands. Under the provisions of the act as a whole, the appellants are not required to pay the tax, and hence respondents should be restrained from compelling them to pay it.

MILLARD and MITCHELL, JJ., concur with STEINERT, J.