[No. 35323. *En Banc.* January 28, 1960.]

THE STATE OF WASHINGTON, *on the Relation of Richard Ruoff, et al., Appellant,* v. ALBERT D. ROSELLINI, *as Governor, et al., Respondents* and *Cross-appellants.*[1]

[1]Reported in 348 P. (2d) 971.

*K. Dennis Jones,* for appellants.

*The Attorney General* and *Rembert Ryals, Assistant,* for respondents and cross-appellants.

MALLERY, J.—House Bill No. 698 of the Thirty-Sixth session of the legislature of the state of Washington was enacted and became Laws of 1959, chapter 316, § 1, p. 1512. Its purpose was to amend the Laws of 1949, chapter 48, § 1, p. 106 [*cf.* RCW 43.03.010] by raising the salaries of the elective state officials. Laws of 1959, chapter 316, *supra,* which is the subject of the instant declaratory-judgment action, reads:

"The annual salaries of the following named state elected officials shall be: [*Governor, twenty-two thousand five hundred dollars;*] lieutenant governor, seven thousand dollars; secretary of state, twelve thousand dollars; state treasurer, twelve thousand dollars; state auditor, twelve thousand dollars; attorney general, fourteen thousand five hundred dollars; superintendent of public instruction, fourteen thousand dollars; commissioner of public lands, twelve thousand dollars; state insurance commissioner, twelve thousand dollars; members of the legislature shall receive for their services twelve hundred dollars per annum, and in addition, ten cents per mile for travel to and from legislative sessions: *Provided,* That anyone appointed to fill any vacancy that may occur in either the senate or house shall not receive any compensation for salary as herein provided

until such appointee shall have qualified for office and shall have taken his oath of office at the next convening regular or special session of the legislature."

The governor vetoed the bracketed item *"Governor, twenty-two thousand five hundred dollars."*

This action seeks a declaration of the effect of the governor's veto upon the amount of the governor's salary from and after the beginning of the next term, and also its effect, if any, upon the validity of the salary raises provided for the other elective state officials.

While we are asked to declare the right of members of the Thirty-Sixth session of the legislature to run for these state offices at the next election, we decline to do so because no justiciable issue is presented relating to the eligibility of candidates prior to the filing of a declaration of candidacy.

The effect of the governor's veto is governed by Art. III, § 12, of the state constitution, the pertinent part of which provides:

" . . . If any bill presented to the governor contain several sections or items, he may object to one or more sections or items while approving other portions of the bill. In such case he shall append to the bill, at the time of signing it, a statement of the section, or sections; item or items to which he objects and the reasons therefor, and the section or sections, item or items so objected to, shall not take effect unless passed over the governor's objection, as hereinbefore provided."

We hold that the bracketed language in the act, which was vetoed by the governor, constitutes an *item* within the purview of Art. III, § 12, of the state constitution. It, therefore, follows that the veto was valid as to that item, and that the remainder of the chapter is valid as passed by the legislature.

We find no merit in the contention that only an item in an appropriation bill is within the purview of the constitutional provision. Foreign states so holding have dissimilar constitutions, hence their rules are not applicable or persuasive in this case.

■ The intention of the legislature in passing the act in question was to raise the salaries of all of the elective state officials. The effect of the veto (unless and until it is over-ridden at the next session of the legislature) was to prevent the intended increase in the salary of the governor.

■ Where an act or part of an act repeals or amends an existing act, the veto of the act or part thereof prevents the intended repeal or amendment from taking effect. The original act or part of an act, which was the subject of the repeal or amendment, remains valid and in force for want of an effective repeal or amendment thereof. Such a veto does not leave the kind of a void in the subject of the act for which the appellants contend. Such a result could occur only where the act vetoed was an original act unrelated to any existing legislation. *Spokane Grain & Fuel Co. v. Lyttaker,* 59 Wash. 76, 109 Pac. 316.

■ We therefore hold that the item in Laws of 1949, chapter 48, § 1, p. 106 [*cf.* RCW 43.03.010], which fixed the governor's salary at fifteen thousand dollars a year is still in effect. The veto of the bracketed item in the Laws of 1959, chapter 316, *supra,* prevented the raise in salary which was intended for the governor, but it did not repeal the salary provision for the governor already existing in the Laws of 1949, chapter 48, *supra.* The remainder of the Laws of 1959, chapter 316, *supra,* having been regularly passed and not having been vetoed, became the law in due course, and the salaries of the other elective state officials prescribed therein will take effect beginning with the next regular term of office.

Judgment will be entered in accordance with this opinion. Neither party will recover costs.

WEAVER, C. J., HILL, DONWORTH, OTT, FOSTER, and HUNTER, JJ., concur.

FINLEY, J. (dissenting)—The first question is whether that portion of House Bill No. 698 relating to the salary of the governor is a separate section, or item, within the mean-

ing of Art. III, § 12, of the state constitution and, therefore, a proper subject of the veto power.

In upholding an exercise of the governor's veto power in *Cascade Tel. Co. v. State Tax Comm.* (1943), 176 Wash. 616, 30 P. (2d) 976, this court used the words *section* and *item* interchangeably. The contention that the governor's veto power should be limited by the happenstance sectionalization of a particular statute was rejected. The court stated

"By the artful arrangement of the subject matter and an arbitrary division into sections, the governor's power might be unduly limited or enlarged without reason."

It was indicated that the particular portion of the bill which the governor vetoed, though technically a subsection or subdivision of a larger section, involved separable or independent subject matter. The court held that the veto power was properly exercised, because

"The governor's act in vetoing this separable item, or section, was purely negative."

This infers that the ultimate question is whether the governor's veto action as to a portion of a bill is negative, as distinguished from affirmative legislation. That the governor cannot use his veto power to legislate *affirmatively* is clearly spelled out by the opinions of this court in *Tacoma v. State Tax Comm.* (1934), 177 Wash. 604, 33 P. (2d) 899, and *Spokane Grain & Fuel Co. v. Lyttaker* (1910), 59 Wash. 76, 109 Pac. 316.

What constitutes affirmative legislation is illustrated by the *Lyttaker* case, *supra.* In its regular session of 1909, the legislature enacted a statute entitled, "An act relating to materialmen's liens, and the enforcement thereof." (Laws of 1909, chapter 45.) The governor approved this act in its entirety. Then, at a special session, the same legislature passed a bill having the same title but containing slightly different provisions. Section 5 of the new bill repealed the prior enactment. The governor attempted to veto all of the new bill, except section 5 (and section 6, containing the standard emergency provision). This court, being of the

opinion that the legislature intended that repeal of the prior act should be dependent upon approval of the affirmative provisions of the new bill, held that the governor's partial veto power had been improperly exercised, because

"The legislature attempted to substitute one act for another and the executive had a right to place his veto on the substitution, but he could not defeat the one act by his veto, and the other by approving the repealing clause."

There should be no question that the governor can veto an entire bill. He may, also, veto a portion of a bill if deletion of the portion so vetoed does not alter the meaning of the remaining portion. In *Lyttaker, supra,* the legislature, conditionally, repealed a prior enactment. By the misuse of his veto power, the governor attempted to change the conditional repeal into an absolute one.

Is the meaning of House Bill No. 698 altered if the portion which raises the governor's salary is deleted from the original bill? In resolving this question, the following chart should be helpful. It is a recapitulation of legislation relating to the salary of elective officials, as originally covered by House Bill No. 698.

Prior to 1948, the maximum salary payable to each of the above-elected state officials was limited by specific constitutional provisions, with the exception of the insurance commissioner and the commissioner of public lands. In 1948, the people of the state of Washington adopted Art. XXVIII, § 1 (amendment 20), which provided that

"All elected state officials shall each severally receive such compensation as the legislature may direct."

At the first opportunity in 1949, the legislature *directed* an over-all raise as to each of the elected officials in the executive branch of the state government and, at the same time, fixed the salary payable to the members of the legislature. Ten years later, by House Bill No. 698, the legislature directed a similar blanket raise in pay for these same elected officials. Both House Bill No. 698 and its 1949 predecessor (Laws of 1949, ch. 48, § 1) included all of the elected offi-

| Office | 1959[a] | 1949[b] | 1947[c] | 1945[d] | 1939[e] | 1925[f] | 1923[g] | 1919[h] | 1907[i] |
|---|---|---|---|---|---|---|---|---|---|
| Governor | $22,500 | $15,000 | $..... | $..... | $..... | $..... | $..... | $..... | $6,000 |
| Lt. Gov. | 7,000 | 6,000 | ..... | 3,000 | ..... | ..... | ..... | ..... | 1,200 |
| Sec. State | 12,000 | 8,500 | ..... | ..... | ..... | ..... | ..... | ..... | 3,000 |
| Auditor | 12,000 | 8,500 | ..... | ..... | ..... | ..... | ..... | ..... | 3,000 |
| Treasurer | 12,000 | 8,500 | ..... | ..... | ..... | 4,000 | ..... | ..... | 3,000 |
| Att'y. Gen. | 14,500 | 10,000 | ..... | ..... | ..... | ..... | 3,500 | ..... | 3,000 |
| Supt. Pub. Instr. | 14,000 | 8,500 | ..... | ..... | ..... | 4,000 | ..... | ..... | 3,000 |
| Com. Pub. Land | 12,000 | 8,500 | ..... | ..... | ..... | ..... | ..... | 5,000 | 3,000 |
| Ins. Commr. | 12,000 | 8,500 | 7,500 | ..... | 6,500 | ..... | ..... | 5,000 | ..... |
| Legislators | 1,200 | 1,200 | ..... | ..... | ..... | ..... | ..... | ..... | ..... |

a. House Bill 698;
b. Laws of 1949, ch. 48, § 1;
c. Laws of 1947, ch. 79, § 02.04;
d. Laws of 1945, ch. 116;
e. Laws of 1939, ch. 226;
f. Laws of 1925, Ex.Sess., ch. 90 and ch. 163;
g. Laws of 1923, ch. 109;
h. Laws of 1919, ch. 124;
i. Laws of 1907, ch. 94, § 1.

cials who were affected in one enumerated section. The subject matter of each of these enactments clearly was a pay raise for *all elected officials of the executive department* of state government and not merely pay raises for certain of such elected officials. The governor's veto, if upheld, would affirmatively alter the subject matter of the 1959 act. In state government, as in a large corporate or other business, there is a direct and significant relationship between the salary of the chief executive and that of subordinate executive officials. Obviously, the salary of the chief executive is the top point of reference in determining or relating the salaries of other executive officials. The legislature apparently realized this practical and significant fact when it directed a blanket increase in salary for all of the officials of the executive department, including the governor, instead of directing only piecemeal pay raises to certain elected officials.

H. B. No. 698 is an integrated whole. It is a constitutionally authorized legislative *directive* regarding compensation to be received by all of the elected state officials of the executive department of government. Obviously, it speaks for itself; *i.e.,* that there was no intent by the legislature to raise the salaries of only certain officials and not to raise the governor's salary. If the governor had any authority to veto, it was as to the whole bill, and not just as to a part or parts of it. If valid, the net result of the governor's veto would be to effect a repeal by implication of a prior act insofar as it had directed and determined the compensation of other state elected officials, but to reenact the portion of the prior act relative to the governor's salary. It seems to me that this too closely approximates affirmative legislative action condemned by the *Lyttaker* case, *supra*. Furthermore, in this connection H. B. No. 698, as enacted by the legislature, would have the effect of prohibiting any member of the legislature from being elected governor, or to any of the other state elective offices. If sustained, the piecemeal veto of the governor's salary raise would constitute affirmative legislative action by the governor, making any member of the legislature eligible for

election to office of governor. I think that such affirmative legislative action is not permitted by the decision in the *Lyttaker* case, *supra.*

Whether his reasons were political expediency, or otherwise, there is another sound reason why the governor's piecemeal veto of his salary raise should be held invalid. Even a casual reader, no doubt, will note that I have consistently alluded to the action of the legislature respecting the salaries of the state elected officials as "direction." As quoted above, Art. XXVIII, § 1 (amendment 20), of the state constitution provides specifically that the compensation to be paid to state elected officials *shall be such as the legislature may direct.* This strongly indicates to me that the people intended that the governor should have no power to veto action by the legislature where such action involves the exercise of an exclusive constitutional grant of power *to the legislature.* If, in the instant case, the veto action of the governor is sustained, his compensation will not be as *directed* by the legislature, but as determined by the governor. The fact that the legislature may attempt to override his veto in the 1961 session does not seem to be of any significance respecting the problem at hand.

I am convinced that the legislative determination implicit in the organization of House Bill No. 698 involves a significant interrelationship between the governor's salary and the salaries of the subordinate officials in the executive department, as determined by the legislative branch of government; and that this does constitute *direction* by the legislature under the constitution of this state, which, as to the salaries of state executive officials, may not be affirmatively countermanded by the governor as is attempted in the present case.

I am, therefore, convinced that the veto of that portion of House Bill No. 698 which raises the governor's salary was a nullity, and that the bill should become effective as law in its entirety.

ROSELLINI, J. (dissenting)—I concur only in the last paragraph of the dissent.